**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| TWO ROADS BREWING COMPANY, LLC,<br>*Plaintiff*,<br><br>v.<br><br>AVANZA CAPITAL HOLDINGS, LLC,<br>*Defendant*. | )<br>)<br>)<br>)<br>)<br>)<br>) | 3:26-CV-01437 (SVN)<br><br><br><br><br><br>October 16, 2026 |

**RULING ON TEMPORARY RESTRAINING ORDER AND MOTION TO DISMISS**

Sarala V. Nagala, United States District Judge.

In this corporate dispute, Plaintiff Two Roads Brewing Company, LLC ("Two Roads") alleges that Defendant Avanza Capital Holdings, LLC ("Avanza") interfered with Two Road's business in a variety of ways, including in its relationships with its customers, by purporting to own Two Roads' accounts receivable. Two Roads alleges that a non-party, Joseph Feerrar, incorrectly represented to Avanza that he had authority to bind Two Roads to agreements purporting to sell its accounts receivable to Avanza. Two Roads brings six claims against Avanza: (1) a claim for declaratory judgment; (2) a request for injunctive relief; (3) a common law claim for tortious interference with business relations; (4) a claim for violation of the Connecticut Unfair Trade Practices Act ("CUTPA"); (5) a claim for slander of title/disparagement of property; and (6) a claim for conversion. Two Roads has moved for injunctive relief in the form of a temporary restraining order and preliminary injunction, while Avanza has moved to dismiss, arguing the Court should abstain from this case while there is a pending related action in New York state; that venue is improper; and that the complaint fails to state cognizable claims for relief.

For the reasons described below, the Court grants in part and denies in part Defendant's motion to dismiss; Counts Two, Five, and Six are dismissed, while the other claims survive dismissal. The Court also grants Plaintiff's motion for a preliminary injunction.

## I. FACTUAL BACKGROUND

When considering a motion to dismiss, the Court treats the factual allegations of the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When addressing a motion for injunctive relief, the Court looks more broadly at the whole record. *See Smalls v. Wright*, No. 3:16-CV-2089 (JCH), 2017 WL 2200909, at *1 (D. Conn. May 19, 2017).

### A. The Origins of the Dispute

Two Roads is a craft beer brewer from Connecticut, which brews and sells its own beer and acts as a contract brewer for other breweries. Compl., ECF No. 1 ¶ 8. According to the complaint, Avanza is a merchant cash advance lender which "provides short-term, high interest funding to small businesses." *Id.* ¶ 9.[1] Avanza has a single member, Francesco Scarso. *Id.* ¶ 9. Central to this dispute is whether Two Roads entered into Merchant Cash Advance ("MCA") Agreements with Avanza. A third party, Joseph Allen Feerrar, signed the MCA contracts purporting to bind Two Roads, claiming he was authorized to act on behalf of Two Roads. Two Roads, however, maintains he was acting without authority and did not represent Two Roads when he signed these contracts.

Feerrar was the principal of a Pennsylvania brewery, the Bald Birds Brewing Company, LLC ("Bald Birds"). *Id.* ¶ 2. In early 2025, Two Roads and Bald Birds engaged with Feerrar and Bald Birds regarding a prospective joint venture with other regional breweries, which was contemplated to include the potential acquisition of Two Roads and other breweries by Feerrar

[1] Avanza disputes the notion that merchant cash advance lenders give "loans," as they do not receive money as repayment but, rather, make an immediate purchase of future accounts receivable. Tr., ECF No. 53 at 65.

and/or his companies. *Id.* As part of these joint venture efforts, Feerrar borrowed money from Two Roads. *Id*. But the joint venture efforts ultimately did not get very far, and Feerrar never came to own Two Roads. *Id*.

The relationship between Feerrar and Two Roads became acrimonious after Two Roads came to believe that Feerrar had misused the funds he had been provided, and then came to learn that he had entered into MCA Agreements with Avanza on behalf of Two Roads. *Id.* ¶ 3. In these agreements, Feerrar listed Two Roads as one of several "merchants" that would be subject to the agreements, and he "sold" the company's future accounts receivable to Avanza. *Id.*; *see also id.* ¶¶ 22–25. The MCAs provided as follows: "Merchant(s) hereby sell, assign, and transfer to Avanza . . . in consideration of the funds provided . . . , all of each Merchant's future accounts, contract rights, and other obligations arising from or relating to the payment of monies from each Merchant's customers and/or other third party payors . . . until the 'Receivables Purchased Amount' [] has been delivered by Merchant(s) to Avanza." *Id.* ¶ 22.

Feerrar entered into two MCA Agreements with Avanza, purportedly on behalf of Two Roads. *Id.* ¶ 23. The first, dated July 29, 2025, purported to sell to Avanza $2,340,000.00 in future accounts receivable, in exchange for a purchase price of $1,500,000.00. *Id.*; July 29, 2025, MCA Agmt., ECF No. 2-1. The second, dated November 12, 2025, purported to sell Avanza $3,120,000.00 in receivables for a purchase price of $2,000,000.00. *Id.*; Nov. 12, 2025, MCA Agmt., ECF No. 2-2. Two Roads had no knowledge of Feerrar's execution of the MCA Agreements, ECF No. 1 ¶ 28, and strenuously maintains that "Feerrar is not and has never been an employee, officer, director, agent, or authorized representative of Two Roads." *Id*. ¶ 3; *see also id.* ¶ 20. Two Roads did not receive any funds or benefits from Avanza pursuant to the MCA Agreements or otherwise. *Id.* ¶ 28.

Two Roads has submitted an affirmation from Feerrar, sworn under penalty of perjury, that he executed the MCA Agreements on behalf of Two Roads, but that he "did not have authorization or authority to bind Two Roads to the [MCA Agreements] or any other agreement." *Id.* ¶¶ 29, 45; ECF No. 2-3 at 3.

B. Avanza's Actions

According to the complaint, in early 2026, at least three Two Roads customers received letters from Avanza, through its collections agent Ace Recovery, "stating falsely that Two Roads 'sold' its accounts receivable to Avanza, and 'direct[ing]' the customers to 'send all accounts receivables due' to Two Roads directly to Avanza or its agents." *Id.* ¶ 33. The letters further threatened Two Roads' customers that their payment to Two Roads of amounts due to it could subject the customers to legal action by Avanza. *Id.* Two Roads alleges that its relationships with these customers are significant, and interference with them has caused and will cause substantial harm to Two Roads' business. *Id.* ¶¶ 34, 38.

Avanza's communications to Two Roads' customers also referenced a purported security interest obtained by Avanza in Two Roads' accounts receivable pursuant to the MCA Agreements. *Id.* ¶ 35. Avanza had filed with the Pennsylvania Secretary of State a UCC-1 Financing Statement identifying Two Roads as a debtor of Avanza and providing that Avanza possesses a security interest in Two Roads' accounts receivable. *Id.* ¶ 36; *see also* Penn. UCC-1 Financing St., ECF No. 2-5.

In February of 2026, after becoming aware of Avanza's communications to its customers, Two Roads notified Avanza that Feerrar had not had authority to bind Two Roads to any agreement. *Id.* ¶ 39. That initially seemed like it might bring the matter to a close. According to Two Roads, Avanza acknowledged Feerrar's conduct and agreed to send corrective letters to Two Roads' customers directing them to ignore the payment-direction notices that were previously sent

to Two Roads customers. *Id.* ¶¶ 5, 40. Avanza itself entered into a settlement agreement with Feerrar where he acknowledged he only "expected" to own Two Roads and had not owned it when MCA Agreements were made. *Id.* ¶¶ 44–45. Two Roads filed a UCC-3 amendment with the Pennsylvania Secretary of State, removing Two Roads as a debtor in the UCC-1 financing statements previously filed by Avanza. *Id.* ¶ 43.

In March of 2026, Two Roads entered into a settlement agreement with Feerrar and a number of his entities, in which Feerrar agreed to pay back some of the funds he had been loaned. *Id.* ¶ 18; Feerrar Settlement Agmt., ECF No. 2 at 3. After Feerrar defaulted on the Settlement Agreement, Two Roads ultimately won a judgment against Feerrar and his entities in Pennsylvania. *Id.* ¶ 19.

C. New York Action and Subsequent Events

Despite this apparent resolution, on April 30, 2026, Avanza filed suit in New York asserting claims based on the MCA Agreements against Feerrar and his entities, as well as against Two Roads. *Id.* ¶¶ 6, 46; *see also Avanza Capital Holdings, LLC v. Four Birds Distilling Company, LLC,* Index No. 515900/2026 (the "New York Action"). Rather than serving Two Roads in Connecticut, Avanza "served" Two Roads by sending summons and complaint to Feerrar's business address in Pennsylvania. *Id.* ¶¶ 47–48. An attorney appeared in the New York Action on behalf of all Defendants, including Two Roads, without Two Roads' knowledge or consent. *Id.* ¶¶ 51–54. Two Roads learned of the New York Action through an internet search on August 4, 2026. *Id.* ¶ 50. Two Roads demanded that Avanza dismiss the New York Action, but Avanza has not done so. *Id.* ¶ 55. Two Roads thereafter appeared through authorized counsel in the New York Action and moved to dismiss the action for lack of personal jurisdiction and failure to state a claim. *Id.* ¶ 56. That motion remains pending. *Id.* ¶ 56.

In August of 2026, Avanza, through the law firm that represents it in the present action, also recommenced with sending payment-direction letters to Two Roads customers, again claiming that Two Roads sold its accounts receivable to Avanza and directing Two Roads' customers to pay money owed directly to Avanza. *Id.* ¶¶ 58–60. The letters attached the earlier UCC-1 Financing Statement, despite that it had been amended through Two Roads' UCC-3 amendment. *Id.* ¶ 60. Two Roads alleges that Avanza also sent out similar notices about their purported security interest in Two Road's accounts receivable to Two Road's financial vendors and payment processors, resulting in disruption to Two Road's payment processing accounts. *Id.* ¶ 62. After Two Roads demanded that Avanza cease sending letters to its customers, Avanza refused, and instead filed another UCC-1 Financing Statement in Pennsylvania listing Two Roads as a debtor of Avanza and again representing that Avanza has a security interest in Two Roads' accounts receivable. *Id.* ¶ 63.

Two Roads contends that "Avanza knows its interference with Two Roads is unjustified, but it has persisted in an improper attempt to unlawfully convert Two Roads' property and pressure Two Roads to pay money it does not owe." *Id.* ¶ 7. Two Roads has expressed concern about how Avanza's conduct has affected and will affect its relationships with its customers and other parties, because it undermines "its hard-earned reputation as a stable, reliable, financially responsible business partner." *Id.*

Further facts developed through the evidentiary hearing on the motion for a preliminary injunction are set forth below.

**<u>AVANZA'S MOTION TO DISMISS</u>**

The Court first addresses Avanza's motion to dismiss Two Roads' complaint. For the reasons set forth below, the Court holds that it need not dismiss the case in favor of the pending

New York Action; that the District of Connecticut is the proper venue; and that Counts Three and Four, in addition to Count One, which Avanza has not moved to dismiss, may proceed. The Court grants Two Roads leave to amend with respect to Counts Five and Six, but not with respect to Count Two.

## I. *COLORADO RIVER* ABSTENTION

First, the Court finds that it need not dismiss this case in favor of the New York action, under the abstention doctrine set forth in *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 813 (1976).

### A. Legal Standard

Federal courts have a "virtually unflagging" obligation to exercise the jurisdiction given to them. *Id.* at 817. Abstention is therefore "the exception, not the rule." *Id.* at 813. "The abstention doctrine comprises a few 'extraordinary and narrow exception[s]' to a federal court's duty to exercise its jurisdiction." *Woodford v. Community Action Agency of Greene Cnty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001) (*quoting Colorado River*, 424 U.S. at 813); *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) ("abstention is generally disfavored"). Under the *Colorado River* exception, a federal court may abstain, and dismiss an action, "to conserve federal judicial resources only in 'exceptional circumstances,' where the resolution of existing concurrent state-court litigation could result in 'comprehensive disposition of litigation.'" *Woodford*, 239 F.3d at 522 (quoting *Colorado River*, 424 U.S. at 813, 817).

For the *Colorado River* exception to apply, the concurrent state court proceeding must be parallel to the federal court proceeding. *Dittmer v. Cnty. of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998). But the existence of a parallel state action alone is not enough to divest a jurisdiction from a district court because "the decision whether to dismiss a federal action because of parallel state-

court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 16 (1983). Courts are to consider:

> (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties*;* (3) whether staying or dismissing the federal action will avoid piecemeal litigation*;* (4) the order in which the actions were filed*,* and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

*Woodford*, 239 F.3d at 522 (cleaned up) (internal citations omitted). None of these factors alone is "necessarily determinative." *Colorado River*, 424 U.S. at 818. And where a factor is "facially neutral," that is a basis for "retaining jurisdiction, not for yielding it." *Woodford*, 239 F.3d at 522.

B. <u>Discussion</u>

*1. Parallel Proceedings*

As an initial matter, the Court concludes that the New York Action and this action are not "parallel" for purposes of *Colorado River* abstention. Two proceedings are parallel "when substantially the same parties are contemporaneously litigating substantially the same issue in another forum." *Niagara Mohawk Power Corp.*, 673 F.3d at 100 (quoting *Dittmer*, 146 F.3d at 118). Put another way, two proceedings are parallel when "there is an identity of parties, and the issues and relief sought are the same." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp*, 108 F.3d 17, 22 (2d Cir. 1997).

This action and the New York Action are not parallel for two reasons. First, although the issue of whether the New York court has personal jurisdiction over Two Roads is one for that court to decide, Two Roads makes a compelling case that it is not subject to personal jurisdiction in New York, and therefore that the New York court will not be able to decide the issues between the

parties, rendering the cases non-parallel. *See Moses H. Cone Mem'l. Hosp.*, 460 U.S. at 28 ("When a district court decides to dismiss or stay under *Colorado River,* it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all."). Moreover, while there is some factual overlap between the breach of contract and unjust enrichment claims asserted in the New York Action—which assert that Two Roads and the other Defendants breached their obligations by failing to remit the promised receivables to Avanza, *see* New York Action Am. Compl., ECF No. 17-2 at 27—and the declaratory relief Two Roads seeks here that it is not bound by the MCA Agreements, *see* ECF No. 1 ¶ 70, the present federal case involves claims by Two Roads that are decidedly not before the New York court, including tortious interference and violation of CUTPA. Accordingly, the New York Action and this case are not parallel. *See Mochary v. Bergstein*, 42 F.4th 80, 86 (2d Cir. 2022) (finding that where issues and claims in the two actions are distinct, actions are not parallel); *Planz v. Planz-Saladino*, No. 3:20-CV-161 (JCH), 2021 WL 6693895, at *4 (D. Conn. June 24, 2021) (finding that actions were not parallel where the federal action asserted claims that were "simply not" before the state court).

As Avanza has failed to establish that the threshold requirement of parallelism has been met here, abstention is not proper. *See Dittmer,* 146 F. 3d at 118 (recognizing that *Colorado River* holds a finding of parallelism is "a necessary prerequisite to abstention"); *Mochary*, 42 F.44th at 86.

*2. Colorado River Factors*

In any event, none of the *Colorado River* factors favor abstention here.

First, this is not an *in rem* action and no court has jurisdiction over a *res* or property. This factor therefore weighs against abstention. *See Niagara Mohawk Power Corp.*, 673 F.3d at 101 (citing *De Cisneros v. Younger*, 871 F.2d 305, 307 (2d Cir. 1989)).

Avanza advances no arguments relating to the second factor, whether the federal forum is less convenient for the parties. "[W]here the federal court is 'just as convenient' as the state court, that factor favors retention of the case in federal court." *Vill. of Westfield v. Welch's*, 170 F.3d 116, 122 (2d Cir. 1999) (citation omitted). As Avanza does not claim inconvenience associated with litigating in federal court and the Court perceives none, this factor weighs against abstention. *See Niagara Mohawk Power Corp.*, 673 F.3d at 101.

Avanza places great weight on the third factor: whether dismissing the federal action will avoid piecemeal litigation. Avanza contends that there will be a risk of incompatible determinations as to "whether [Two Roads] became bound by the MCA Agreements, whether it ratified Feerrar's conduct, and whether Avanza obtained contractual or security rights." ECF No. 17-1 at 7. But, as the Second Circuit has noted, this factor is important when there is a "risk of inconsistent outcomes not preventable by principles of res judicata and collateral estoppel," such as when all potentially liable defendants are parties in one lawsuit but not the other. *Woodford*, 239 F.3d at 524. That would not be the case here because both Two Roads and Avanza are parties to both cases. Thus, the risk of inconsistent outcomes not curable by operation of preclusion doctrines is diminished. Additionally, the fact that Two Roads asserts different common law and statutory claims than what are at issue in the New York Action reduces the overlap between the actions and, as a result, the risk of piecemeal or duplicative litigation. *Id.* at 523–24. Because abstention would not avoid additional litigation, this factor strongly weighs against it.

The fourth factor, relating to the order in which the proceedings were filed, is neutral. The Court notes filing dates and progress can be quite different issues. Avanza highlights that the New York Action was filed April 30, 2026, and this case was filed September 3, 2026. ECF No. 17 at 6. But Two Roads cogently observes that the New York Action has barely advanced since it was filed: Two Roads is still contesting that the New York court has personal jurisdiction over it, and the jurisdiction issue is not being argued until October 28, 2026. ECF No. 28 at 16. Filing first matters less than progress because "this factor does not turn exclusively on the sequence in which the cases were filed, 'but rather in terms of how much progress has been made in the two actions.'" *Village of Westfield*, 170 F.3d at 122 (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 21). Here, although the New York Action was filed first, its progress (or relative lack thereof) renders the fourth factor neutral.

The fifth factor, pertaining to whether state or federal law applies to the merits of the case, also does not favor abstention. "[A]lthough the presence of federal issues strongly advises exercising federal jurisdiction, the absence of federal issues does not strongly advise dismissal, unless the state law issues are novel or particularly complex." *Id.* at 124. Avanza does not argue the applicability of this factor, and both this action and the New York Action bring claims governed by state, rather than federal, law. As Avanza does not contend that the state law issues are novel or complex, this factor does not weigh in favor of abstention.

Finally, the Court cannot conclude at this juncture that the New York Action will be an "adequate vehicle for the complete and prompt resolution of the issues between the parties," *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 28, given that Two Roads asserts claims against Avanza here that are not part of the New York Action. Avanza does not address this factor.

In sum, the present case does not present a particularly difficult question about whether this action should be dismissed in favor of the New York Action. The factors clearly weigh against abstention. As such, the Court declines to dismiss this case on grounds of *Colorado River* abstention.

## II. TRANSFER OF VENUE

Next, the Court declines to transfer venue to the Eastern District of New York.

Avanza contends that, because a forum selection clause in the MCA Agreements specifies that any litigation about the agreement must be litigated in "any court located in the Counties of Kings, Nassau, New York, or Sullivan in the State of New York," ECF 17-1 at 8, this action should be transferred to the Eastern District of New York. Avanza is correct that forum selection clauses in contracts are presumptively valid under certain circumstances, *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007), and that when parties have agreed to a valid forum selection clause, a district court should ordinarily transfer the case to the forum specified in the clause, *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for the Western Dist. of Texas*, 571 U.S. 49, 62 (2013). But Avanza's argument has an obvious logical problem: the central issue here whether Feerrar had apparent authority to bind Two Roads to the MCA Agreements in the first place. If Two Roads is not bound by the MCA Agreements because Feerrar did not have authority to bind Two Roads, Two Roads cannot be bound by the forum selection clause within them. *See Gaynor v. Diamond*, No. 24-CV-5690 (KPF), 2025 WL 2256662, at *8 (S.D.N.Y. Aug. 7, 2025) (finding that a forum selection clause was invalid where a party pleaded with particularity that she never signed the agreements containing the clause and her signatures were forged).

And even if the forum selection clause were presumptively enforceable, a party may overcome a presumption in favor of enforcement of a forum selection clause by "making a

sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *See Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014) (quoting *Phillips*, 494 F.3d at 383–84). Here, Two Roads has made a sufficient showing that it is not bound by the MCA Agreements and that it would be unreasonable to enforce the forum selection clause within them. Accepting Two Roads' contentions as true at this stage, Feerrar committed fraud in purporting to act with authority to bind Two Roads to the MCA Agreements, when he lacked such authority. Accordingly, the Court declines to enforce the forum selection clause in the MCA Agreements, and will not transfer the case to a different venue.

## III. FAILURE TO STATE A CLAIM

Next, the Court addresses Avanza's arguments that Plaintiff's complaint fails to state a claim for which relief may be granted as to Counts Two through Six.[2] The Court concludes that while Counts Two, Five, and Six must be dismissed, Counts Three and Four survive dismissal. The Court will grant leave to amend as to Counts Five and Six only.

### A. Legal Standard

Pursuant to Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted. When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This plausibility standard is not a "probability

[2] Avanza has not moved to dismiss Count One, seeking a declaratory judgment.

requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.* The Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (cleaned up), and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

B. <u>Count Two: Injunctive Relief</u>

Count Two, seeking injunctive relief, must be dismissed, as Two Roads conceded at oral argument. *See* Oct. 5, 2026, Hearing Tr., ECF No. 53 at 95. Two Roads asks the Court to prohibit Avanza from sending demand letters to its customers and associates, and to compel Avanza to take corrective measures for any such demand letters and UCC-1 Financing Statements it has already dispatched. ECF No. 1 ¶ 73. But an injunction "is not a separate cause of action; it is a remedy." *Manrique v. State Farm Mut. Auto. Ins. Co.*, No. 21-CV-224 (KMK), 2021 WL 5745717, at *8 (S.D.N.Y. Dec. 2, 2021) (quoting *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 407 (S.D.N.Y. 2010)). Accordingly, while Count Two is dismissed, Two Roads may still pursue injunctive relief, both preliminary and permanent, as a remedy in this action. *See Pace v. Schwartz*, 680 F. Supp. 2d 591, 594 (S.D.N.Y. 2010) ("The fact that plaintiffs have pleaded their request for injunctive

relief as a separate claim rather than as a part of the prayer of relief in no way disentitles them to seek injunctive relief.").

C. Count Three: Tortious Interference with Business Relationships

The Court concludes Two Roads has adequately pleaded a claim for tortious interference with business relationships in Count Three.

Two Roads alleges that "Avanza knew of Two Roads' business relationships with [its] customers and intentionally interfered with those relationships by sending false and misleading payment-direction notices, stating falsely that Two Roads sold and granted a security interest in its accounts receivable to Avanza, and unlawfully directing Two Roads' customers to remit money owed to Two Roads to Avanza rather than to Two Roads." ECF No. 1 ¶ 76.

Under Connecticut law, "in order to recover for a claim of tortious interference with business expectancies, the claimant must plead and prove that: (1) a business relationship existed between the plaintiff and another party; (2) the defendant intentionally interfered with the business relationship while knowing of the relationship; and (3) as a result of the interference, the plaintiff suffered actual loss." *Hi-Ho Tower, Inc. v. Com-Tronics, Inc*., 255 Conn. 20, 32–33 (2000); *Beyond the Dog, LLC v. Salzer*, No. 3:24-CV-1439 (VAB), 2026 WL 884140, at *23 (D. Conn. Mar. 31, 2026). The plaintiff must also plead that the defendant acted with "improper motive" or through "improper means." *Reyes v. Chetta*, 143 Conn. App. 758, 764 (2013); *Daley v. Aetna Life and Cas. Co*., 249 Conn. 766, 806 (Conn. 1999).

The Court rejects Avanza's challenges to the viability of Count Three. First, Avanza contends that Two Roads has failed to identify particular business relationships with which Avanza interfered. Not so. Although Two Roads does not name specific customers in its complaint, it has alleged that it has such business relationships and that Avanza sent communications to three of Two Roads' customers in early 2026 and at least two of Two Roads' "primary customers" in

August of 2026. ECF No. 1 ¶¶ 33, 58, 75. And Two Roads has attached to its complaint releases that Avanza's agent, Ace Recovery Group, planned to send to three specific Two Roads customers who received payment-direction notices. *See* Proposed Releases, ECF No. 2-7 at 12–14 (letters directed to Atlas Distributing, Burke Distributing, and Links Drinks). Accordingly, Two Roads has adequately alleged specific business relationships with which Avanza is claimed to have interfered.

Second, Two Roads has adequately pleaded actual loss at this juncture. "Unlike other torts in which liability gives rise to nominal damages even in the absence of proof of actual loss . . . it is an essential element of the tort of unlawful interference with business relations that the plaintiff suffered actual loss." *Hi-Ho Tower, Inc.*, 255 Conn. at 33 (cleaned up). But the exact amount of damages need not be known with full certainty. "Sometimes, when the court is convinced that damages have been incurred but the amount cannot be proved with reasonable certainty, it awards nominal damages." *Id.* at 34 (quoting *Restatement (Second), Torts* § 774A, cmt c (ALI, 1979)).

Here, although Two Roads has not yet quantified its monetary losses, it does allege an actual loss. Two Roads pleads that its customer and business relationships were damaged by Avanza's actions, that it had disruptions to its payment-processing accounts, and that it has lost reputational goodwill. ECF No. 28 at 24 (citing ECF No. 1 ¶¶ 61–62; Hittle Decl. ¶ 38). These allegations are sufficient at this stage. *See Indiaweekly.com, LLC v. Nehaflix.com, Inc.,* 596 F. Supp. 2d 497, 505 (D. Conn. 2009) (finding that a company's act of covering up an advertisement for another company was sufficient to plead tortious interference with business relations, as "the actual loss would be the money paid for the frustrated advertising and the loss of goodwill the advertisement would have brought"); *Anthem Sports, LLC v. Under the Weather, LLC*, 320 F. Supp. 3d 399, 419 (D. Conn. 2018) (holding that derogatory comments about a product targeted

at potential customers sufficiently pleaded tortious interference because customers may not have purchased the product due to the comments, resulting in actual loss).

Finally, Two Roads has adequately pleaded that Avanza acted with improper motive and means. Taken as true, Two Roads alleges that, in early 2026, Avanza falsely represented to Two Roads' clients that Two Roads had sold its accounts receivable to Avanza, that Two Roads had defaulted on its agreement, and that Two Roads' customers should redirect their payment to Avanza, rather than paying Two Roads. This suffices to plead improper interference with business relationships. *See Premium Merchant Funding 26, LLC*, No. 25-CV-1086 (KMK), 2026 WL 867165, at *11 (S.D.N.Y. Mar. 30, 2026) (finding that a party pleaded improper interference through the filing of misleading lien notices where the liens had already been terminated). And even if Avanza contests that it knew of Feerrar's lack of authority in early 2026, Two Roads alleges that, in August of 2026—after Avanza allegedly acknowledged that Feerrar lacked authority to bind Two Roads to the MCA Agreements—Avanza yet sent another round of payment-direction notices to Two Roads' customers. This alleged activity sufficiently alleges that Avanza acted with improper motive and means.

Thus, the Court declines to dismiss Court Three.

D. Count Four: CUTPA

Next, the Court holds that Count Four survives dismissal.

In Count Four, Two Roads alleges that Avanza's conduct constitutes unfair and deceptive acts or practices in violation of CUTPA, Conn. Gen. Stat. § 42-110a *et seq.* ECF No. 1 ¶ 80. The specific conduct that Two Roads alleges is that Avanza "(a) fil[ed] unauthorized UCC-1 financing statements naming Two Roads as a debtor without Two Roads' knowledge or consent; (b) sen[t] false and misleading payment-direction notices to Two Roads' customers demanding that they remit money owed to Two Roads to Avanza rather than Two Roads; (c) resum[ed] the same

unlawful conduct after previously acknowledging that it was unjustified and purporting to issue corrective notices; and (d) re-fil[ed] new UCC-1 financing statements naming Two Roads as a debtor after Two Roads had filed UCC-3 amendments removing itself from the prior filings and after Avanza was already aware that it had no security interest in Two Roads' property." *Id.* ¶ 81.

CUTPA provides, in relevant part, that "(a) No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). Avanza challenges only that Two Roads has not adequately pleaded ascertainable loss of money or property as a result of the challenged practice. ECF No. 17 at 10–11. While CUTPA does require a showing of ascertainable loss, the plaintiff need not prove a "specific amount of actual damages." *Goins v. JBC & Assocs., P.C.*, 352 F. Supp. 2d 262, 274 (D. Conn. 2005). "As the Connecticut Supreme Court has explained, 'ascertainable' means capable of being discovered, observed, or established, while 'loss' has been held synonymous with deprivation, detriment and injury. It is a generic and relative term." *Id.* (cleaned up) (quoting *Hinchliffe v. American Motors Corp.,* 184 Conn. 607, 613 (1981)). Thus, the "loss is ascertainable if it is measurable even though the precise amount of the loss is not known." *Hinchliffe*, 184 Conn. at 614.

Two Roads has adequately pleaded ascertainable loss under this standard. As Two Roads explains in its opposition, it has alleged damage to customer relationships, harm to its commercial reputation, disruption of its payment-processing accounts, potential diversion of payments owed to Two Roads, and encumbrance of its accounts receivable, *see* ECF No. 28 at 28—losses that can ultimately be measured. The natural inference from Two Roads' allegations is that Avanza's actions have negatively affected its relationships with customers, by causing the customers to question Two Roads' financial stability and resulting, at the very least, in a loss of customer

goodwill. Although Two Roads will ultimately bear the burden of proving its damages to a reasonable certainty, what it has alleged is sufficient at this stage. *See Serv. Rd. Corp. v. Quinn*, 241 Conn. 630, 643–44 (1997) ("[I]n the business context, a plaintiff asserting a CUTPA claim may satisfy the ascertainable loss requirement . . . by establishing, through a reasonable inference, or otherwise, that the defendant's unfair trade practice has caused the plaintiff to lose potential customers."). Additionally, Two Roads may succeed on its request for injunctive relief with a showing, by a preponderance of the evidence, that the alleged unfair trade practice resulted in "a loss," even if it cannot prove a "particular loss or the extent of a loss." *Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*, 287 Conn. 208, 218–219 (2008) (citation omitted).

Thus, the Court will not dismiss Count Four.

E. Count Five: Slander of Title/Disparagement of Property[3]

Court Five, alleging slander of title, is dismissed, with leave to replead.

In Connecticut, "[t]he tort of slander of title is defined as 'the uttering or publication of a false statement derogatory to the plaintiff's title, with malice, causing special damages as a result of diminished value of the plaintiff's property in the eyes of third parties. The publication must be false, and the plaintiff must have an estate or interest in the property slandered.'" *Chamerda v. Opie,* 185 Conn. App. 627, 648–49 (2018) (quoting *Elm St. Builders, Inc.*, 63 Conn. App. at 669–70). The plaintiff must demonstrate pecuniary damages to prevail on a slander of title claim, *id.*, and "special damages" must be pleaded with particularity under the Federal Rules of Civil Procedure. *Scheinman v. Glass & Braus LLC*, No. 3:18-CV-1551 (SRU), 2020 WL 6875139, at

[3] Although Two Roads' complaint labels this claim as "Slander of Title/Disparagement of Property," both Avanza's motion to dismiss and Two Roads' opposition to Avanza's motion to dismiss discusses only slander of title. Slander of title and disparagement of property appear to be the same tort. *See Elm St. Builders, Inc. v. Enter. Park Condo. Ass'n, Inc.*, 63 Conn. App. 657, 670 (2001) (citing to "3 Restatement (Second) Torts, Disparagement of Property–Slander of Title § 624"). As the parties address this claim as one for slander of title alone, the Court does the same.

*12 (D. Conn. Nov. 23, 2020) (citing Fed. R. Civ. P. 9(g), which states that, "[i]f an item of special damages is claimed, it must be specifically stated"). "[A] clouded title, alone, does not constitute damages per se. Rather, a plaintiff must present evidence of how the clouded title resulted in some pecuniary loss," measured by money. *Id.* (quoting *Gilbert v. Beaver Dam Ass'n of Stratford Inc.*, 85 Conn. App. 663, 673 (2004)).

Two Roads accuses Avanza of "(a) filing unauthorized UCC-1 financing statements with the Pennsylvania Department of State that falsely state that Avanza holds a security interest in Two Roads' accounts receivable; and (b) sending payment-direction notices to Two Roads' customers falsely claiming that Avanza "purchased the accounts receivables" of Two Roads and holds a security interest in such accounts receivable." ECF No. 1 ¶ 87. Two Roads alleges that Avanza engaged in this conduct while knowing these filings and notices to be false or with reckless disregard for their truth. *Id.* ¶ 90. As a result of Avanza's conduct, Two Roads alleges it suffered special damages, "including conversion of its accounts receivable, diminution of the value of its accounts receivable, and disruption of its customer, banking, and vendor relationships, resulting in monetary loss." *Id.* ¶ 91.

Avanza is correct that Two Roads has failed to plead, with any specificity, the special pecuniary damages it claims to have suffered. Two Roads' allegations of special damages are simply broad categories, untethered to any specific losses sustained beyond mere clouding of title. While these types of allegations may be sufficient under the regular pleading standard of Federal Rule of Civil Procedure 8, they cannot suffice to meet the heightened pleading standard of Rule 9(g). For instance, Two Roads fails to explain specifically how the filing of UCC-1 Financing Statements caused any particular financial loss to it, beyond the possible clouding of its interest in

its accounts receivable. Nor does Two Roads allege, with specificity, any monetary loss that actually resulted from Avanza sending payment-direction notices to Two Roads' customers.

Accordingly, the Court cannot conclude that Count Five is properly pleaded. Count Five dismissed, with leave to replead.

F. Count Six: Conversion

Finally, the Court also dismisses Two Roads' claim for conversion, with leave to replead.

In Connecticut, "[t]he tort of [c]onversion occurs when one, without authorization, assumes and exercises ownership over property belonging to another, to the exclusion of the owner's rights." *Deming v. Nationwide Mut. Ins. Co.*, 279 Conn. 745, 770 (2006) (*quoting Hi–Ho Tower, Inc.*, 255 Conn. at 43). "The essence of the wrong is that the property rights of the plaintiff have been dealt with in a manner adverse to him, inconsistent with his right of dominion and to his harm." *Id.* (citation omitted). Money can be subject to conversion. *Id.* at 771.

Two Roads alleges that, by sending unauthorized payment-direction notices to Two Roads' customers directing them to remit payments owed to Two Roads to Avanza, Avanza exercised "unauthorized dominion and control over Two Roads' accounts receivable, to the exclusion of Two Roads' rights therein." ECF No. 1 ¶ 94. Two Roads further alleges that, "[t]o the extent that any of Two Roads' customers diverted payments to Avanza in response to Avanza's payment-direction notices, such diversion constitutes conversion of Two Roads' property." *Id.* ¶ 95.

There is a critical problem with Two Roads' allegations: it is not clear Avanza has actually exercised any dominion or control over Two Roads' property as of yet. As the prefatory line of its allegation in paragraph 95 reveals, Two Roads does not appear to be aware of any instance of its customers diverting payments to Avanza. *Id.* ("To the extent that any of Two Roads' customers diverted payments to Avanza. . ."). Thus, Two Roads has not alleged any conversion actually occurred; instead, it has alleged merely that it could have occurred, which is speculative and

conjectural at this juncture. While there is some allowance for the fact that discovery has not yet occurred at this stage, this does not mean that the Court can allow a count to proceed with the mere hope that a party will discover wrongdoing. At this stage, an allegation of hypothetical conversion does not make a conversion claim plausible. *See Iqbal*, 556 U.S. at 678 ("[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief'") (quoting *Twombly,* 550 U.S. at 547).

Two Roads' contention that Avanza made a public assertion of ownership of its accounts receivable, and thereby converted them, *see* ECF No. 28 at 26, is unavailing. To engage in conversion, a defendant must "assume[] and exercise[] the right of ownership over property belonging to another, to the exclusion of the owner's rights." *Epstein v. Automatic Enterp.*, 6 Conn. App. 484, 488 (1986). As presently alleged, Avanza has not assumed or exercised the right of ownership over Two Roads' accounts receivable to the exclusion of Two Roads; it has merely claimed a right of ownership over them that has not yet materialized. The case on which Two Roads relies, *Stuart & Sons, L.P. v. Curtis Pub. Co., Inc.*, 456 F. Supp. 2d 336, 346 (D. Conn. 2006), is inapposite, as it addressed when the statute of limitations would begin to run for a conversion claim involving a party alleged to be a bailee of property who later asserted ownership over the property and attempted to sell it; it does not hold that the mere announcement of ownership constitutes conversion. *See id.* Indeed, if simply claiming a right to ownership were sufficient to allege conversion, it would do away with the necessary elements of a conversion claim, which require assumption *and* exercise of the rights of dominion and control over the property, to the exclusion of the rightful owner.[4]

[4] It is possible for conversion to occur in the absence of actual possession, through constructive possession. *See Vossbrinck v. Eckert Seamans Cherin, & Mellott, LLC*, 301 F. Supp. 3d 381, 390 (D. Conn. 2018). But as Two Roads does not argue that Avanza constructively possessed its accounts receivable, the Court does not reach this issue.

Because Two Roads alleges only hypothetical conversion at this juncture, Count Six must be dismissed. The Court grants leave to replead this claim.

G. Summary

In summary, Counts Two, Five, and Six are dismissed. Counts Fix and Six may be repleaded in an amended complaint. Counts One and Three remain pending in the operative complaint.

* * *

**TWO ROADS' MOTION FOR PRELIMINARY INJUNCTION**

In conjunction with the filing of its complaint, Two Roads moved for a temporary restraining order ("TRO") and preliminary injunction ("PI"). Following the first of two days of an evidentiary hearing, the Court issued the requested TRO in part, prohibiting Avanza and its agents "from directly or indirectly contacting, communicating with, or sending any payment-direction notices, collection letters, demand letters, or similar communications to any customers, vendors, account debtors, financial vendors, payment processors, or other counterparties of Two Roads, asserting, representing, or implying that: (i) Two Roads sold, assigned, or transferred its accounts receivable or other property to Avanza; (ii) Two Roads owes or has defaulted on any obligation to Avanza; (iii) Avanza holds a security interest in Two Roads' accounts receivable or other assets; (iv) Avanza holds a power of attorney with respect to Two Roads' account debtors or credit-card processing; or (v) such customers, vendors, or counterparties are required to remit

payments owed to Two Roads to Avanza or its agents, attorneys, or designees." Order, ECF No. 44 at 1–2.[5]

Two Roads' request for a preliminary injunction of the same nature remains pending. Two Road argues that it has demonstrated a likelihood of success on the merits of its claims, and that irreparable harm will result to its customer relationships, commercial reputation, and business operations unless Avanza and its agents are restrained from communicating with Two Roads' customers for the duration of this suit. *See* Mot. for TRO and PI, ECF No. 3. The Court agrees that these concerns are merited and grants the motion for a preliminary injunction, for the reasons explained below.

A. Additional Facts Developed through Evidentiary Hearing

The Court held a two-part evidentiary hearing on Two Roads' motion on October 2 and 5, 2026, at which it heard testimony from Two Roads' CEO, Bradley Hittle, and its former CFO, John Muldoon, and received a significant number of documentary exhibits.

In relevant part, Hittle testified that Two Roads engages in two lines of business: selling its own beer through distributors and making beer for its contract customers. *See* Oct. 2, 2026, Hearing Tr., ECF No. 52 at 8–10. A brewery's relationship with its distributors can "make or break a brand" because distributors choose which brands to promote to customers. *Id.* at 9, 40. Two Roads' contracting brewing business has become increasingly significant over time and

[5] While Two Roads' motion for a TRO and PI was pending, Avanza, through Ace Recovery, sent communications to five Two Roads' customers asserting that Two Roads defaulted on a secured merchant agreement; that Avanza holds a perfected security interest in Two Roads' assets, including its accounts receivable; that Two Roads granted Avanza a limited power of attorney with respect to Two Roads' account debtors and credit card processing; and that Two Roads breached the merchant agreement by failing to remit its receivables to Avanza. *See* Ace Recovery Corr., ECF No. 55-3 through 55-6. These letters were dated September 28, 2026. The Court had scheduled the October 2, 2026, evidentiary hearing on Two Roads' TRO/PI motion on September 22, 2026—six days before the date on the letters. The Court views Avanza's actions in sending these letters after the hearing was scheduled as a deliberate effort to interfere in Two Roads' business relationships before the Court could issue the TRO prohibiting it from doing so, and expects full compliance with the TRO and PI going forward.

constitutes a large percentage of its volume. *Id.* at 10. Hittle described that Two Roads had wanted to enter into an "alliance" with one of Feerrar's companies, Bald Birds Brewing, and announced this alliance in the fall of 2024 through a press release on its website. *Id.* at 11–13. The alliance was contemplated to include Feerrar purchasing Two Roads, but the acquisition was not consummated. *Id.* at 17, 19–20.

Feerrar was given access to a line of credit guaranteed by W. Whitney George, Two Roads' present owner, for investment capital, *id.* at 18–19, and Two Roads shared financial information with Feerrar through a non-disclosure agreement. *Id.* at 20–21. In the Merrill Lynch paperwork authorizing Feerrar to access the line of credit, he is listed as a "Manager." *See* Merrill Lynch Addendum, ECF No. 37-1 at 1. Hittle testified, however, that Feerrar was never a manager, employee, officer, or owner of Two Roads, and was never authorized to enter into agreements with anyone, including the MCA Agreements, on Two Roads' behalf. ECF No. 52 at 25–26, 33–36, 45–48. Ultimately, Feerrar borrowed approximately $11 million from the line of credit, which he has never repaid. *Id.* at 23, 47.

Hittle further testified that, when Two Roads' customers received the payment-direction notices from Ace Recovery, Avanza's agent, in February of 2026, the customers "began to question [Two Roads'] financial stability" and its "ability to operate," which was very harmful to its business. *Id.* at 27. He described that he received several calls from Two Roads customers in February of 2026 after the customers received payment-direction notices from Ace Recovery. *Id.* at 38–39, 43. For instance, a Boston-area distributor was "very upset and concerned about becoming embroiled" in this controversy, and was concerned about whether Two Roads would be stable, long-term partner because the letters "made them feel like [Two Roads] wasn't." *Id.* at 39. Hittle explained that, if a distributor questions whether a brewery is a "sound financial partner,

they're going to potentially walk away from any focus on your brand." *Id.* at 40; *see also id.* at 65. Hittle also described that contract brewing customers received Ace Recovery's letters and that the letters were "very concerning to them," because the rely on Two Roads to make their product and if Two Roads is viewed as financially unstable, "then they very well might want to seek other contract producers and leave Two Roads." *Id.* at 44–45. One contract customer in particular had left its previous supplier because of "some kind of troubles," and was "very aware of how important it is to have a reliable producer." *Id.* at 45.

Finally, Hittle testified that, when Ace Recovery resumed sending payment-direction notices to Two Roads' customers in August of 2026, additional customers became concerned. *Id.* at 57–59. Its largest contract customer was "very concerned, wanted to know what it meant," and asked Hittle whether Two Roads would be able to continue producing its product because "they felt like this was a signal that there's financial troubles with Two Roads. . . .To this day, they are still very concerned." *Id.* at 58; *see also id.* at 64–65. Hittle stated that he has heard from reliable sources that this customer was pursuing alternative brewing locations in case Two Roads could not continue to produce for them. *Id.* at 58–59.

On October 5, 2026, the Court heard testimony from John Muldoon, Two Roads' former CFO. In relevant part, Muldoon confirmed that Feerrar had been given access to the Merrill Lynch line of credit, ECF No. 53 at 39–40, and testified that Merrill Lynch was instructed on October 31, 2025, not to release further funds from the line of credit without Muldoon's or George's explicit permission because of concerns regarding how Feerrar was spending the money, *id.* at 41. Muldoon testified that, in February of 2026, after Two Roads' customers received payment-direction notices, Muldoon had a phone call with Feerrar which 'started with [Feerar] still denying it and then eventually Mr. Feerrar broke down crying repeatedly stating: I fucked up. I fucked up.

I fucked up.'" *Id.* at 44–46. He further testified that Frank Scarso, Avanza's principal, "acknowledged that Two Roads had been done wrong and was not in fact going to be a party to" the MCA Agreements, and that Ace Recovery sent retraction letters to the customers who had received payment-direction notices. *Id.* at 46–48. Muldoon testified that, in a reversal of course in May of 2026, Scarso telephoned him "irate" and "belligerent," stating, "[t]ell Joey to pay us and, you know, we don't have to sue you." *Id.* at 49. Unbeknownst to Muldoon at the time, Avanza had already initiated the New York Action. *Id.* at 50.

Finally, after completion of the evidentiary hearing, Two Roads submitted a declaration from George, stating that he never authorized Feerrar to enter into the MCA Agreements, or any other agreement with Avanza, on Two Roads' behalf. George Decl., ECF No. 55-1 at 2.

B. <u>Legal Standard</u>

Both temporary restraining orders and preliminary injunctions are exercises of the Court's equitable powers. "The Second Circuit applies similar standards for temporary restraining orders and preliminary injunctions, 'and district courts have assumed them to be the same.'" *Smalls*, 2017 WL 2200909 at *1; § 2952 Temporary Restraining Orders—Procedure, 11A Fed. Prac. & Proc. Civ. § 2952 (3d ed.) ("District courts generally apply the same standard to a temporary restraining order as that applicable to a preliminary injunction.").

These standards are exacting. "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Resources Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The Court must "balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* (citation omitted). Generally, a party seeking either form of injunctive relief must establish that: (1) that there is either (a) a likelihood of success on the merits or (b) a sufficiently serious question as to the merits of the case to make it a fair ground for litigation and a balance of hardships tipping decidedly in the party's favor; (2)

the party will likely experience irreparable harm in the absence of injunctive relief; (3) that the balance of hardships tips in the party's favor; and (4) that the public interest would not be disserved by issuance of the injunction. *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015). Whether to grant such relief "rests in the sound discretion of the district court." *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990). Unlike a motion to dismiss, the court can consider the entire record, including affidavits and hearsay, when evaluating whether to issue a preliminary injunction. *Smalls*, 2017 WL 2200909, at *1.

C. <u>Discussion</u>

The Court finds that issuance of a preliminary injunction is warranted here.

First, Two Roads has met the "single most important prerequisite for the issuance of a preliminary injunction": irreparable harm. *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 80 (2d Cir. 2024) (quoting *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009)).

A party seeking an injunction must make a showing of irreparable harm before the other requirements for an injunction can be considered. *Id.* To make this showing, "the moving party must demonstrate that absent a preliminary injunction it will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Id.* (cleaned up; citation omitted). Where there is an "adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." *Id.* (citation omitted). Thus, the moving party "must show that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation." *Id.* (citation omitted).

Two Roads has demonstrated it would suffer an irreparable injury absent a preliminary injunction. Two Roads contends Avanza's misleading communications to its customers "call Two

Roads' financial stability into question and threaten the customer relationships on which its business depends." ECF No. 3 at 16. Two Roads points out that the loss of customer relationships from these events could have far-reaching consequences for its business, many of which are not repayable with a damage award. *Id.* Irreparable harm can be based on "loss of reputation, good will, and business opportunities," because damages based on these losses are "difficult to establish and measure." *Register.com, Inc. v. Verio*, 356 F.3d 393, 404 (2d Cir. 2004). For instance, the Second Circuit has found that injunctive relief is appropriate "where it would be 'very difficult to calculate monetary damages that would successfully redress the loss a relationship with a client that would produce an indeterminate amount of business in years to come.'" *Id.* (quoting *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999)). As Hittle's testimony established, the payment-direction notices Avanza sent to Two Roads' customers caused those customers to question the financial stability of Two Roads, and to consider taking their business elsewhere. The loss of reputation, goodwill, and business opportunities that have resulted and may continue to result if Avanza continues to direct customer payments to it, rather than Two Roads, demonstrates irreparable harm.

Next, Two Roads has demonstrated a likelihood of success on the merits on at least one of its claims, which is all that is necessary to satisfy the this requirement for issuance of injunctive relief. *See P.G. v. Jefferson Cnty., New York*, No. 5:21-CV-388, 2021 WL 4059409, at *4 (N.D.N.Y. Sept. 7, 2021) (citing *L.V.M. v. Lloyd*, 318 F. Supp. 3d 601, 618 (S.D.N.Y. 2018)). Although the Court has dismissed Counts Two, Five, and Six above, Two Roads makes a compelling showing that it is entitled to a declaratory judgment that it is not bound by the MCA Agreements, as alleged in Count One, and that Avanza has tortiously interfered with its business relationships, as alleged in Count Three.

Under Connecticut, New York, and Pennsylvania, law, the acts of a principal may be interpreted to bestow apparent authority on an agent—but, importantly, the actions of the agent alone are insufficient to establish apparent authority. *Ackerman v. Sobol Family P'ship, LLP*, 298 Conn. 495, 508 (2010) ("[A]pparent authority is that semblance of authority which a principal, through his own acts or inadvertences, cause or allows third persons to believe his agent possesses . . . Consequently, apparent authority is to be determined, not by the agent's own acts, but by the acts of the agent's principal."); *Carte Blance (Singapore) PTE, Ltd. v. Diners Club Intern., Inc.*, 758 F. Supp. 908, 920 (S.D.N.Y. 1991) ("a third party can invoke the doctrine of apparent authority only when the words or conduct of the *principal*, communicated to the third party, have caused the third party to believe that an agent has authority to contract on the principal's behalf") (quoting *Legal Aid Soc. of Northeastern New York, Inc. v. Economic Opportunity Com'n of Nassau Cnty.*, 132 A.D.2d 113, 115 (N.Y. App. Div. 1987)); *Santiago v. Philly Trampoline Park, LLC*, 343 A.3d 995, 1005 (Pa. 2025) ("an agent cannot, simply by his own words, invest himself with apparent authority," as "[s]uch authority emanates from the action of the principal and not the agent").

The weight of the evidence—including Hittle's and Muldoon's testimony; Ace Recovery's sending of retraction letters to Two Roads' customers in the spring of 2026; the settlement agreement between Two Roads and Feerrar; and George's declaration—supports Two Roads' contention that Feerrar did not have apparent authority to enter into the MCA Agreements on behalf of Two Roads. The only evidence suggesting that Two Roads, as principal, gave Feerrar apparent authority to enter into the MCA Agreements on behalf of Two Roads is the Merrill Lynch authorization form for the line of credit, purporting to represent that Feerrar was a "Manager" of Two Roads. *See* ECF No. 37-1 at 1. But Hittle credibly testified that Feerrar was never given the title of Manager by Two Roads. And, in any event, while the Merrill Lynch authorization may

have provided Feerrar with apparent authority to draw on the line of credit, there is nothing in the record indicating that the scope of the apparent authority provided through the Merrill Lynch form extended to binding Two Roads to the terms of the MCA Agreements. Thus, Two Roads has made a showing of likelihood of success on its request for declaratory judgment in Count One.

Similarly, Two Roads has demonstrated a likelihood of success on Count Three, tortious interference with business relationships. Avanza, through Ace Recovery, sent notices to Two Road's customers, directing them to pay Avanza instead of Two Roads, even after Avanza knew Feerrar did not have authority to bind Two Roads to the MCA Agreements. ECF No. 1 ¶¶ 58–60. It apparently continued in this conduct just days before the Court held a hearing on the present motion. Two Roads has therefore made a sufficient showing that Avanza was (and is) intentionally interfering in Two Roads' business relationships. Further, Avanza also sent out allegedly false notices of its purported security interest to Two Roads payment processors and financial vendors, which disrupted Two Roads' payment-processing accounts. *Id.* ¶ 62. The loss of current or potential customers, or the loss of business caused by this disruption, constitute actual damages. Thus, the Court is satisfied that Two Roads has demonstrated a likelihood of success on the merits of this claim. *See Premium Merch. Funding 26, LLC*, 2026 WL 867165, at *11–12, 16–17.

The Court also finds that the balance of hardships tips in Two Roads' favor. Absent injunctive relief, Avanza may continue sending letters to Two Roads' customers demanding payment, and Two Roads faces the threat of Avanza filing more UCC-1 Financing Statements alleging that Two Roads is a debtor of Avanza. These are serious burdens which might drastically impact Two Roads' business. Avanza has far less to lose, as an injunction would temporarily prevent it from obtaining payments from Two Roads' customers, but these are monetary harms

that could be remedied after judgment if Avanza were to prevail in this suit. As such, the balance of the hardships is drastically tiled towards Two Roads.

Finally, the public interest would not be disserved by issuance of the injunction. If Two Roads prevails in proving its claims, the public interest clearly favors the injunction. As Two Roads points out in its motion, "[t]he public has no interest in allowing Avanza to use the UCC filing system and third-party collection notices to purportedly enforce non-existent security interests in the accounts receivable of a company which never granted Avanza any such interests." ECF No. 3 at 23. Even if Avanza is correct, however, there is little lost in granting the injunction, as Avanza would simply have had to wait longer for payment—but it will not be seriously inconvenienced. At worst, any such delay could be remedied with financial compensation. Thus, the Court finds that the public interest factor weighs in Two Roads' favor.

In sum, all factors favor the granting of a preliminary injunction. At the evidentiary hearing, Two Roads withdrew its request for the injunction to include affirmative requirements that Avanza file UCC-3 amendments and send corrective notices to Two Roads' customers and other counterparties to whom it had previously sent correspondence concerning Two Roads' accounts receivable. *See* ECF No. 53 at 90–91. Accordingly, the temporary restraining order the Court issued at ECF No. 44 is converted into a preliminary injunction and shall last for the duration of this case or until this Court orders otherwise.

## IV. CONCLUSION

For the reasons described herein, Two Roads' motion for a preliminary injunction at ECF No. 3 is GRANTED. The temporary restraining order the Court entered at ECF No. 44 is converted into a preliminary injunction and shall last the duration of this case or until this Court orders otherwise. Avanza's motion to dismiss at ECF No. 17 is GRANTED in part as to Counts Two,

Five, and Six of Two Roads's complaint, and DENIED in all other respects. Two Roads may file an amended complaint by November 6, 2026, with respect to Counts Five and Six only.

**SO ORDERED** at Hartford, Connecticut, this 16th day of October, 2026.

*/s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE